No. 3–07–0494

Filed June 26, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | |
|---|---|
| THE CITY OF WASHINGTON, ILLINOIS, | ) Petition for Review of an Order |
| | ) of the Illinois Labor Relations Board, |
| Petitioner-Appellant, | ) State Panel. |
| | ) |
| v. | ) ILRB Nos. S–UC–06–082 |
| | ) & S–UC–06–084 |
| ILLINOIS LABOR RELATIONS BOARD | ) |
| and LABORERS INTERNATIONAL UNION | ) |
| OF NORTH AMERICA, LOCAL 231, | ) |
| | ) |
| Respondents-Appellees. | ) |

JUSTICE WRIGHT delivered the opinion of the court:

Petitioner City of Washington (City) seeks review of a final order of the State Panel of

respondent Illinois Labor Relations Board (Board), in which the Board determined that division

supervisors of the City's public services department were included in a bargaining unit

represented by respondent Laborers International Union of North America, Local 231 (Union).

We affirm the Board's order.

BACKGROUND

On April 13, 2006, the Board issued a certification of representative, granting in part a

majority interest petition brought by the Union to include nonprofessional employees of the

City's public services department in a bargaining unit represented exclusively by the Union.  In

the representation proceedings, the City disputed certain positions, including part-time and seasonal employees, and the division supervisors at issue in this review. However, because a tally of the Union's evidence of majority interest established that the number of disputed positions would not affect the determination of majority support for the Union, the Board approved the petition for a bargaining unit which excluded those positions which were disputed by the City and included the undisputed positions. Pursuant to rules established for majority interest petitions in this situation, the Board directed the Union to proceed under the Board's unit clarification procedure to attempt to incorporate the disputed positions into the bargaining unit.

On May 3 and May 5, 2006, the Union filed two unit clarification petitions. In case No. S–UC–06–082, the Union sought inclusion of the City's department of public services employees occupying the following positions: public works inspector; public services supervisor of streets, cemetery and grounds; public services water and sewer maintenance supervisor; public services water treatment plant supervisor; and public services sewer treatment plant supervisor. The petition in case No. S–UC–06–084 sought inclusion of the City's department of public services part-time and seasonal employees who had a community of interest with the full-time employees.

At a hearing held before an administrative law judge (ALJ) on October 19, 2006, the City initially objected to the Union's use of the unit clarification procedure. The City's attorney contested whether the clarification procedure could be used to expand the collective bargaining unit beyond those positions included in the April 13, 2006, certification of representative. The City argued that none of the three bases for unit clarification set forth in section 1210.170(a) of Title 80 of the Illinois Administration Code (80 Ill. Adm. Code §1210.170(a) amended at 27 Ill. Reg. 7393 (eff. May 01, 2003)) applied. Counsel for the Union noted that the Board directed the

2

Union to file unit clarification petitions when it certified the bargaining unit but excluded the disputed positions subject to further review.

The ALJ took the City's objection under advisement, and the City then presented testimony of City administrator Robert Morris. Morris testified that he was in charge of the day-to-day operations of the City and directly accountable to the mayor, the city council and the City's elected officials. According to Morris, the following four individuals reported directly to him: the police chief; the City comptroller; the planning and development director; and City engineer Kenneth Newman who, in turn, was the "ultimate supervisor" of the City's department of public services. Morris explained that the department of public services consisted of four functional divisions: the streets and cemeteries division, which was responsible for the repair and maintenance of streets, alleys, sidewalks, storm drainage, traffic control signs and cemeteries; the water treatment plant, which was responsible for the maintenance and repair of the water distribution system and water meters; the sewage treatment plant, which was responsible for the operation, repair, maintenance and replacement of two waste water treatment plants; and the water and sewer maintenance division, which had responsibility over the operation, maintenance and repair of the City's water distribution and waste water collection systems.

Kenneth Newman was the City's next witness. He testified that the public services department had 19 full-time employees, 5 seasonal employees, and 8 to 10 part-time summer employees. The four division supervisors who reported directly to him were: Craig Cohen, supervisor of the streets and cemeteries division; Ken Klekamp, supervisor of the water treatment plant; Eric Martin, supervisor of the waste water treatment plants; and Rick James, supervisor of

the water and sewer maintenance division.  He said Klekamp supervised one employee in the water treatment plant, but both Klekamp and the other employee were responsible for the operation, maintenance and repair of the water treatment plant.  Both Klekamp and the other employee also inspected and replaced water meters.

According to Newman, Janes supervised three employees in the water and sewer maintenance division.  Janes and his crew maintained the City's water distribution and sewage collection system.  He worked along with his employees on a daily basis, operating a dump truck, backhoe and other equipment to dig up streets and repair leaks.

Newman informed the ALJ  that  he permitted the supervisors of the department's four divisions to provide input with respect to hiring decisions, promotions and discharges.  He stated the supervisors also provided day-to-day direction to their employees, made purchases up to $100 without Newman's approval, interacted with citizens, and prepared annual employee evaluations.  However, the evaluations did not affect the employees' pay or status.

Next, Eric Martin testified that he oversees the City's two waste water treatment plants.  He held a Class 1 waste water treatment license and supervised three employees -- two other Class 1 licensed operators and one laborer.  Martin and the employees he supervised turned in biweekly time sheets to Newman and received overtime pay for hours worked in excess of 40 per week.  Martin testified the operators knew what had to be done and did not require much direct supervision.  Martin estimated he spent one hour per day completing paperwork and making telephone calls.  He frequently worked alongside his employees and assisted them in making repairs and maintaining equipment for approximately three or four hours a day.  The waste water treatment plants had to be checked seven days a week.  Consequently, Martin and the three other

4

waste water treatment employees rotated equal weekend shifts to check the treatment plants on weekends.

Martin testified that he consulted with Newman on major projects, including plans for expansion of one of the plants. Martin said he had hired two employees in the five-year period prior to the hearing. With regard to the most recent hire, Martin screened applications and recommended a candidate to Newman, who agreed with his choice.

Craig Cohen was the City's last witness. He testified that he oversees the City's right-of-ways, gutters, sidewalks, curbs, cemeteries and storm inlets. He supervised 7 full-time employees, including 2 foremen and 5 laborers, and he hired approximately 10 summer employees. He directed the employees' daily activities and obtained bids for major equipment and supplies needed by the streets and cemeteries division, which he referred to Newman for purchase. Like Martin, Cohen helped his employees with tasks at their jobsites and with snow ploughing. Cohen estimated he spent about half of his workday doing construction-type work with his employees. Cohen and the other employees turned in biweekly time sheets and were paid overtime for hours exceeding 40 hours per week.

Following the City's evidence, both parties rested. After receiving written arguments of counsel, the ALJ issued her recommended order and decision. First, the ALJ found that the unit clarification procedure was appropriate for resolving the status of the contested employees with regard to the bargaining unit pursuant to section 1210.100(b)(7)(B). The ALJ found the evidence insufficient to establish that any of the division chiefs spent a preponderance of the workday exercising supervisory authority. She determined that only Cohen and Martin performed any job duties different from their subordinates, and concluded only Cohen exercised supervisory

5

authority in hiring. Accordingly, the ALJ determined that the division supervisors were not supervisory employees within the meaning of the Illinois Public Labor Relations Act (5 ILCS 315/3(r) (West 2006)). The ALJ also decided that the seasonal employees were not short-term employees as defined by the Act and shared a community of interest with other employees in the bargaining unit. She found no basis for excluding the cemetery sextant. Accordingly, the ALJ recommended that all of the challenged employees of the City's public services department be included in the existing bargaining unit.

The City appealed the ALJ's recommended order and decision to the Board's five-member State Panel. After reviewing the parties' positions and the report of proceedings before the ALJ, the State Panel rejected the City's arguments and accepted the recommended order *in toto*. Accordingly, the Board issued a certification of unit clarification which included the disputed positions in the bargaining unit of the City's public services department. The City thereafter filed a petition for review in this court.

ISSUES AND ANALYSIS

1. Unit Clarification Procedure

The City contends that the Union improperly used the unit clarification procedure to add the disputed positions to the public service department's collective bargaining unit. According to the City, a unit clarification petition may be used only under the circumstances enumerated in the rule set forth in section 1210.170(a) of title 80 of the Illinois Administrative Code (Code) (80 Ill. Adm. Code §1210.170(a) amended at 28 Ill. Reg. 7393 (eff. May 01, 2003)). In response, the Union and the Board contend the unit clarification procedure was proper pursuant to the rule in subsection 1210.100(b)(7)(B) of the Code (80 Ill. Adm. Code §1210.100(b)(7)(B) amended at 28

6

Ill. Reg. 4172 (eff. February 19, 2004)).

The question raised by the City's challenge to the Union's use of the unit clarification procedure is a question of law, which we normally would review *de novo*. *City of Collinsville v. Illinois State Labor Relations Board*, 329 Ill. App. 3d 409, 419 (2002). However, it is well settled that an administrative agency's interpretation of its own rules is entitled to deference, because its interpretation stems from the agency's expertise and experience. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 369 Ill. App. 3d 128, 138 (2006). Accordingly, this court will not disturb the agency's construction of its rules unless the agency's construction is clearly erroneous, arbitrary, or unreasonable. *Water Pipe Extension, Bureau of Engineering v. Illinois Local Labor Relations Board,* 252 Ill. App. 3d 932, 936 (1993).

The City claims section 1210.170(a), which was most recently amended by the Board in May 2003, limits the circumstances in which a party may petition for unit clarification. This section provides:

"An exclusive representative or an employer may file a unit clarification petition to clarify or amend an existing bargaining unit when:

1) substantial changes occur in the duties and functions of an existing title, raising an issue as to the title's unit placement;

2) an existing job title that is logically encompassed within the existing unit was inadvertently excluded by the parties at the time the unit was established; and

3) a significant change takes place in statutory or case law that affects the bargaining rights of employees." 80 Ill. Adm. Code §1210.170(a) amended at 27 Ill. Reg.

7

7393 (eff. May 1, 2003).

The City correctly notes that the three circumstances enumerated in section 1210.170(a) did not apply in this case. However, contrary to the City's argument in this review, section 1210.170(a) does not define the only circumstances when the unit clarification procedure applies. Instead, as recently acknowledged in *State of Illinois v. State of Illinois*, 364 Ill. App. 3d 1028, 1034 (2006), the Board's rule, *together with case law*, defines the circumstances in which the unit clarification procedure may be used. In addition to the circumstances set forth in section 1210.170(a), the court observed that the Board's unit clarification procedure was judicially approved when a newly created job classification had job functions similar to functions already covered in the bargaining unit. *State of Illinois*, 364 Ill. App. 3d at 1032, citing *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board*, 333 Ill. App. 3d 177, 182 (2002). Accordingly, in addition to the four previously authorized scenarios in section 1210.170(a) and *American Federation of State, County & Municipal Employees*, the court in *State of Illinois* ruled that the Board was required to use the unit clarification procedure to review the inclusion of employees who were alleged by the employer to be statutorily excluded as confidential employees. *State of Illinois*, 364 Ill. App. 3d at 1034.

The Board's adoption of section 1210.100(b)(7)(B), effective February 19, 2004, provides further support for the argument that section 1210.170(a) is nonexclusive and circumstances requiring use of unit clarification procedures may be expanded. This more recently adopted rule provides in pertinent part as follows:

"Where there are unit or exclusion issues, but the number of the contested positions is not sufficient to affect the determination of majority support, then the Executive Director will

8

\*\*\* prepare a tally of the finding of majority support and issue a certification and the tally concerning the employees not in dispute. *The disputed employees' inclusion in the unit will be subject to the Board's unit clarification procedures*." (Emphasis added.) 80 Ill. Adm. Code §1210.100(b)(7)(B), amended at 28 Ill. Reg 4172 (eff. February 19, 2004). Section 1210.100(b)(7)(B) recognizes that, just as the unit clarification process is appropriate to remove statutorily excluded employees from a bargaining unit (see *State of Illinois*, 364 Ill. App. 3d at 1034), the process is equally appropriate for including employees whose status was disputed during majority interest representation proceedings.

In our opinion, it is now clear from both relevant case precedent and the Board's rules that unit clarification is the preferred and most efficient method to resolve bargaining unit inclusion and exclusion disputes. The Board's reliance on the authority of section 1210.100(b)(7)(B) to resolve the parties' dispute in this case was not manifestly erroneous. Accordingly, we hold the Board properly overruled the City's objection to the Union's use of the unit clarification procedure.

## 2. Statutory Supervisors

Next, the City argues that the four public services division chiefs who were titled "supervisors" should have been excluded from the public service department's collective bargaining unit. The City asserts the division chiefs were "supervisors" as defined by the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2006)). This issue presents a mixed question of law and fact, which we review for clear error. *Metropolitan Alliance of Police v. Illinois Labor Relations Board, State Panel*, 362 Ill. App. 3d 469, 474 (2005). Under the clearly erroneous standard of review, the Board's determination should be affirmed unless, based on our

review of the entire record, this court is left with the definite and firm conviction that a mistake has occurred. *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 50 (2002).

In order to avoid the conflict of interests that would arise if supervisors were subject to the same personnel policies as their subordinates, the Act excludes supervisors from the same bargaining units as nonsupervisory personnel. As noted by our supreme court, "[t]he potential for a conflict of interest lies in the supervisor's *authority* to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation." (Emphasis in original.) *City of Freeport v. Illinois State Labor Relations Board,* 135 Ill. 2d 499, 518 (1990). An employer seeking to exclude employees from a bargaining unit because they are statutory supervisors bears the burden of proving that fact. See *County of Cook (Provident Hospital) v. Illinois Labor Relations Board*, 369 Ill. App. 3d 112, 123 (2006).

The Act defines "supervisor" as

"an employee whose *principal work* is *substantially different* from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, *if the exercise of that authority is not of a merely routine* or clerical nature, *but requires the consistent use of independent judgment.* Except with respect to police employment*, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority.*" (Emphasis added.) 5 ILCS 315/3(r) (West 2006).

To fall within this definition, the employee must meet all parts of the statutory test. *Metropolitan Alliance of Police*, 362 Ill. App. 3d at 476.

In determining whether an employee's principal work is substantially different from that of his subordinates, the Board must determine whether the employee's work is "obviously and visibly different" from that of his subordinates. *City of Freeport,* 135 Ill. 2d at 514. If the work is obviously different, the first part of the statutory test is met and the inquiry proceeds to the second part, which analyzes the employee's supervisory authority. However, if the supervising employee's work is similar to that of his subordinates, then the Board determines whether "the nature and essence" of the work is substantially different. *City of Freeport,* 135 Ill. 2d at 514. The "nature and essence" analysis is qualitative; *i.e.*, statutory "supervisor" status is shown if the employee has both supervisory authority, and the ability to exercise it to impact a subordinate's employment at any time. *City of Freeport,* 135 Ill. 2d at 518.

Here, the ALJ found Ken Klekamp's duties as the City's water treatment division supervisor were essentially the same as those of the one employee under him, and there was no evidence that the "nature and essence" of Klekamp's work was supervisory. Likewise, the ALJ found the City's evidence failed to show that Rick Janes's duties as the supervisor of the water and sewer maintenance crew were visibly or qualitatively different from those of his subordinates. The Board adopted these findings, and the record on review supports them. Neither Klekamp nor Janes testified at the hearing, and the testimony of the City administrator and City engineer did not indicate that these employees performed work that was different from work performed by the men they supervised. Accordingly, we cannot say the Board's conclusion that Klekamp and Janes were not statutory supervisors is clearly erroneous.

11

The ALJ did find that division chiefs Cohen and Martin, unlike Klekamp and Janes, performed duties that were obviously and visibly different from their subordinates. The testimony of Cohen and Martin showed that these employees, unlike their subordinates, spent part of the workday assigning duties, purchasing equipment, completing paperwork and making telephone calls. Therefore, because Cohen and Martin met the first part of the statutory definition of "supervisor," the next inquiry concerns whether the evidence showed that Cohen and Martin perform any of the duties enumerated in the statutory definition, and whether they do so with "independent judgment." In this regard, the ALJ found that Martin did not exercise independent judgment in performing any of the enumerated duties, and Cohen did.

An employee exercises "independent judgment" when he makes a choice between two or more significant courses of action without substantial review by superiors. For purposes of this part of the statutory test, a single indicium of supervisory authority accompanied by independent judgment is sufficient to show supervisory status. *Metropolitan Alliance of Police*, 362 Ill. App. 3d at 477-78.

The evidence in this case showed that both Martin and Cohen were involved in hiring employees. However, the evidence of Martin's hiring experience indicated that Ken Newman conducted an independent review before the employee was hired. Therefore, it cannot be said that Martin exercised independent judgment in hiring. The City's evidence failed to demonstrate that other arguably supervisory activities assumed by Martin and Cohen were performed based on their independent judgment, impacted their subordinates' employment or were accomplished based on their effective recommendations. Accordingly, we do not find that the Board erroneously determined that Martin was not a statutory supervisor.

12

The evidence indicated Cohen hired summer help and seasonal employees as a supervisor without Newman's oversight. Therefore, we reach the question of whether the evidence showed that he spends a preponderance of his time exercising supervisory authority. Cohen testified he spent about half of his workday performing the same duties as his subordinates. Contrary to the City's argument on review, there was no evidence that Cohen or any of the other division supervisors spent more than half of their workdays exercising supervisory authority. Accordingly, we find the Board correctly concluded that none of the City's department of public services division supervisors were "supervisors" as defined by the Act.

3. Scope of the Board's Order

In its third issue, the City argues the Board's decision is overbroad. The City contends the order could be read to extend its inclusion of "all seasonal employees of the City" and "all part-time employees of the City" to summer employees and employees in departments other than the public services department, some of whom are represented by other unions.

Respondents contend the parties were all cognizant of the fact that only those positions that were within the City's public services department were at issue. Moreover, the hearing officer's recommended order and decision, which the Board adopted, specified the part-time and seasonal employees at issue were those "employed by the City of Washington *in its Department of Public Services Division*." (Emphasis added.) In addition, the Board's "Certification of Unit Clarification" issued on June 25, 2007, specifically limits the positions included in the unit to the cemetery sexton and public works inspector, who are not at issue in this review, the four division supervisors who are at issue, and "all non-professional public service employees, all seasonal employees, all part-time employees of the City of Washington Street, Sewer and Water

13

Departments."

The City presents the overbreadth argument without citation to case law or other authority and could be deemed waived . See 188 Ill. 2d R. 341(h)(7). Moreover, we agree with respondents that the argument is hyper-technical and without merit. The parties were well aware of the specific employees whose positions were in dispute at the unit clarification proceeding for this collective bargaining unit. The Board's order requires no further clarification by this court. Accordingly, we decline the City's invitation to modify the Board's order.

4.  Majority Interest Determination

Last, the City seeks a remand to the Board for a redetermination of majority interest on the ground that the Board exceeded its authority in adopting its regulations. Citing *County of Du Page v. Illinois Labor Relations Board, State Panel*, 375 Ill. App. 3d 765, 779 (2007), *appeal allowed,* 226 Ill. 2d 582 (table), the City argues the Board's regulations for determining majority interest improperly allow the decision to be made on the basis authorization cards without further evidence. As noted by the court in *County of Du Page*, the Act requires that evidence supporting a majority interest petition include dues deduction authorization *and* other evidence (5 ILCS 315/9(a-5) (West 2006)), whereas the Board's regulations permit certification of representative on the basis of *either* dues deduction authorization cards *or* other evidence (80 Ill. Adm. Code §1210.80(d)(2)(A), amended at 28 Ill. Reg. 4172 (eff. February 19, 2004)). The City "presumes" the Board relied on the same regulations the appellate court found invalid in *County of Du Page* when it ruled on the Union's majority interest petition in this case. In the alternative, the City suggests that, because of turnover of personnel during the pendency of the litigation in this case and the small number of employees involved, a remand should be granted to redetermine whether

14

the Union maintains a majority status within the City's public services department.

Respondents argue that here, unlike *County of Du Page*, the City has waived its challenge to the validity of the Board's regulations regarding the evidence needed to sustain the Union's majority interest petition by failing to raise it at the representation proceedings, or at the unit clarification proceedings or before the Board's State Panel. Respondents contend the argument is also untimely, because certification of the bargaining unit's representative is subject to judicial review and such review which must be sought within 35 days of the Board's decision. 5 ILCS 315/9(i) (West 2006); 735 ILCS 5/3–103 (West 2006); *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 289 Ill. App. 3d 1019, 1021 (1997).

It is well settled that a party aggrieved by an agency action must pursue all available administrative remedies before seeking judicial review. Any argument or objection which was not raised during the pendency of the administrative proceeding is deemed waived and cannot be asserted for the first time on judicial review of the agency's decision. *Board of Education of the City of Chicago*, 289 Ill. App. 3d at 1021.

In this case, the record on review indicates the City actively participated in the representation proceedings and disputed the inclusion of several of its public services department employees in the bargaining unit. Any objection to the Union's evidence in support of its majority interest petition should have been presented at the representation hearing. However, the City has not provided this court with a transcript of the representation proceedings. The record before us and the parties' arguments on review indicate that the City did not levy a timely objection to the evidence supporting the Union's majority interest petition and chose not to seek judicial review from the Board's certification of representative. The City's brief does not provide

a persuasive basis for granting an exception to the waiver principle, and counsel did not address the Union's waiver argument during oral arguments. Accordingly, we conclude the City has forfeited the argument challenging the Union's evidence in support of its majority petitions, which the City attempts to bootstrap to this review of the unit clarification decision.

## CONCLUSION

The decision of the State Panel of the Illinois Labor Relations Board is affirmed.

Affirmed.

LYTTON and O'BRIEN, JJ., concur.