# Illinois Official Reports

## Appellate Court

---

### *International Union of Operating Engineers Local 965 v.*
### *Illinois Labor Relations Board, State Panel*,
### 2015 IL App (4th) 140352

---

| | |
|---|---|
| Appellate Court Caption | INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 965, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE OFFICE OF THE COMPTROLLER, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-14-0352 |
| Filed | April 14, 2015 |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. 5-UC-13-044. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael W. O'Hara (argued) and Timothy J. Shrake II, both of Cavanagh & O'Hara, LLP, of Springfield, for petitioner.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for respondent Office of the Comptroller. |

| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Holder White and Steigmann concurred in the judgment and opinion. |
|---|---|

**OPINION**

¶ 1        In May 2013, respondent, the Office of the Comptroller (Comptroller), filed a unit-clarification petition with the Illinois Labor Relations Board (Board) seeking to have it clarify that public service administrators (PSAs) were excluded from collective bargaining following an amendment to the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 to 28 (West 2012)). In June 2013, petitioner, International Union of Operating Engineers Local 965 (Union), filed a request to intervene and a motion to stay the Comptroller's petition. In November 2013, the administrative law judge (ALJ) issued his recommended decision and order. In April 2014, the Board granted the Comptroller's unit-clarification petition.

¶ 2        On appeal, the Union argues (1) the ALJ failed to timely rule on its petition to intervene and (2) the Board erred in granting the Comptroller's unit-clarification petition. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4        On April 4, 2013, the Union and the Comptroller entered into two collective-bargaining agreements (CBAs) which were each applicable to separate bargaining units. Each bargaining unit included Comptroller employees who held the job-classification title of PSA. Both CBAs were effective retroactively from July 1, 2012, until June 30, 2015.

¶ 5        On April 5, 2013, section 3(n) of the Act (5 ILCS 315/3(n) (West 2012)), which defines a "public employee" or "employee" for purposes of the Act, was amended (see Pub. Act 97-1172, § 5 (eff. Apr. 5, 2013)). The amendment added language to section 3(n) which excluded any "person who is a State employee under the jurisdiction of the *** Comptroller who holds the position of [PSA]" from the definition of "public employee" or "employee." 5 ILCS 315/3(n) (West 2012).

¶ 6        The Comptroller initially interpreted the new language in section 3(n) as self-effectuating, *i.e.*, that as of April 5, 2013, the PSAs employed by the Comptroller no longer enjoyed the rights associated with collective bargaining. The Union took the position that the statutory amendment was not applicable to the parties' existing contracts and would not affect any bargaining-unit employees until after June 30, 2015, the date the parties' CBAs expired.

¶ 7        On April 26, 2013, the Union served a grievance on the Comptroller, alleging the Comptroller's action "to unilaterally remove the [PSA] classification from both of the bargaining units" at issue violated the parties' CBAs. On May 9, 2013, the Comptroller refused to recognize the grievance, stating that because the PSAs had been excluded from collective

bargaining by operation of law, they could no longer file a grievance or be represented by the Union.

¶ 8 On May 13, 2013, the Comptroller filed a unit-clarification petition with the Board, seeking to have it clarify that PSAs under the jurisdiction of the Comptroller were excluded from collective bargaining and the bargaining units at issue as of the effective date of the amendment–April 5, 2013. The Comptroller argued a reading of the plain language of the Act demonstrated the exclusion of the PSAs was self-effectuating upon the effective date of the amendment. In the alternative, the Comptroller argued the PSAs should be excluded based on a significant change in statutory law.

¶ 9 On May 29, 2013, the Union filed petitions in the circuit court (case Nos. 12-MR-397 and 13-MR-398) "to compel processing of grievance and to compel arbitration." The court dismissed the Union's petitions in November 2013.

¶ 10 On June 7, 2013, the Union filed a request to intervene and a motion to stay the unit-clarification petition or, in the alternative, a request for a formal hearing. The Union noted it had filed petitions in the circuit court to compel processing of the grievance and to compel arbitration and argued the court rather than the Board should decide the effective date of amended section 3(n). The Union also argued amended section 3(n) could not be applied to the PSAs until the existing CBAs expired in June 2015.

¶ 11 On June 14, 2013, the Comptroller filed a response, arguing intervention should be denied because (1) if amended section 3(n) was self-effectuating and the PSAs were excluded from collective bargaining by operation of law on April 5, 2013, the Union had no interest in the proceedings and (2) if amended section 3(n) was not self-effectuating, the Union automatically would be a party to unit-clarification proceedings.

¶ 12 In November 2013, the ALJ issued his recommended decision and order. The ALJ stated that, while amended section 3(n) "unambiguously declares that, as of the effective date of the amendment, the [Comptroller's] PSAs are not public employees," the Comptroller was still required to file a unit-clarification petition with the Board.

¶ 13 The ALJ recommended denying the Union's request to stay the Board's proceedings until the petitions to compel processing of grievances and compel arbitration could be ruled on by the circuit court, stating representation issues are for the Board to decide. The ALJ also stated it was unnecessary to grant the Union intervenor status where it was already considered to be "a regular party." The ALJ saw no need for a formal hearing since a purely legal issue was involved. The ALJ concluded that, as of April 5, 2013, the PSAs employed by the Comptroller were not public employees as defined by the Act and recommended the PSAs be excluded from the bargaining units.

¶ 14 In December 2013, the Union filed exceptions to the ALJ's recommended decision and order. Thereafter, the Comptroller filed a response. In February 2014, the Board heard oral arguments.

¶ 15 In April 2014, the Board issued its decision regarding the unit-clarification petition. *International Union of Operating Engineers Local No. 965*, 30 PERI ¶ 282 (ILRB State Panel 2014) (*Office of the Comptroller*). The Board found "the ALJ correctly held that the unit clarification petition was properly before the Board and should be granted." *Office of the Comptroller*, 30 PERI ¶ 282. The Board rejected the Union's argument that the Comptroller was seeking to apply amended section 3(n) retroactively, stating "[t]he issue before us is not

one of retroactive application at all. Instead, the [Comptroller] is seeking the prospective application of the amendment to alter the composition of the bargaining units into the future based on a change in the law that occurred after the collective bargaining agreements were executed." *Office of the Comptroller*, 30 PERI ¶ 282. The Board also stated, in part, as follows:

> "At oral argument, the Union acknowledged that the PSAs were no longer covered under the Act, but argued that they could only be excluded following the expiration of the current collective bargaining agreements covering the PSAs. Under both Board and Illinois Appellate Court precedent, it is well-established that the Board has the authority to remove from an existing bargaining unit, pursuant to the unit clarification petition mechanism, positions that are not covered under the Act. [Citations.] Given that the April 5, 2013, amendment of the Act manifestly constitutes 'a significant change . . . in statutory or case law that affects the bargaining rights' of the subject PSAs, the unit clarification petition is clearly appropriate under the express terms of Section 1210.170(a)(3) of the Board's Rules. We find nothing in the Act, the Board's Rules, or applicable case law to support the Union's contention that the existence of a collective bargaining agreement precludes the removal of a covered position for the life of the agreement, where the position is expressly excluded from the coverage of the Act." *Office of the Comptroller*, 30 PERI ¶ 282.

The Board granted the unit-clarification petition and directed its executive director to issue a certification excluding the PSAs employed by the Comptroller from the existing bargaining units. The executive director issued the certification that same day.

¶ 16    In May 2014, the Union filed a petition for direct administrative review of the Board's decision with this court. In November 2014, this court affirmed the circuit court's dismissals of the Union's petitions to compel processing of grievances and to compel arbitration. *International Union of Operating Engineers, Local 965 v. Office of the Comptroller*, 2014 IL App (4th) 131079, 23 N.E.3d 552.

¶ 17                                          II. ANALYSIS
¶ 18                                    A. Petition To Intervene
¶ 19    The Union argues the ALJ failed to timely rule on its petition to intervene, thereby depriving it of due process in this matter. Respondents argue the Union has forfeited its argument as to this issue by failing to adequately raise it below and now on appeal. We agree with respondents.

¶ 20    A party forfeits review of an issue by failing to raise it before the Board. *Department of Central Management Services/The Department of Public Health v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110013, ¶ 83, 979 N.E.2d 603. Moreover, a party forfeits review of an issue on appeal by failing to support its argument with citation to authorities. *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 719, 921 N.E.2d 367, 380 (2009); see also Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (requiring that argument contain citation to authorities).

¶ 21    In the case *sub judice*, the Union did not meaningfully raise the issue of due process before the Board. Now on appeal, the Union does little more than cut and paste its argument from its brief of exceptions and cites no authority to support a due-process argument. Thus, we find the issue forfeited.

¶ 22                                    B. The Board's Decision

¶ 23        The Union argues the Board erred in granting the Comptroller's unit-clarification petition, claiming the PSAs were not affected by amended section 3(n) of the Act until the expiration of the CBAs. We disagree.

¶ 24        When a decision of the Board involves a question of law, our review is *de novo*. *Department of Central Management Services/Pollution Control Board v. Illinois Labor Relations Board, State Panel*, 2013 IL App (4th) 110877, ¶ 17, 982 N.E.2d 971. Our supreme court has stated that when determining whether a statute is to be applied retroactively, as opposed to prospectively only, the proper analysis is that set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), and followed by *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38, 749 N.E.2d 964, 971 (2001). *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 23, 25 N.E.3d 570.

> "Under *Landgraf*, if the legislature has clearly prescribed the temporal reach of the statute, the legislative intent must be given effect absent a constitutional prohibition. Where there is no express provision regarding the temporal reach, the court must determine whether applying the statute would have a 'retroactive' or 'retrospective' impact; that is, 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' [Citation.] Where there would be no retroactive impact, as defined in *Landgraf*, the court may apply the statute to the parties. [Citation.] However, if applying the statute would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied." *Hayashi*, 2014 IL 116023, ¶ 23, 25 N.E.3d 570.

¶ 25        Our supreme court has also "determined, however, that, as long as section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2002)) is in effect, an Illinois court will never need to go beyond step one of the *Landgraf* test." *People v. Atkins*, 217 Ill. 2d 66, 71, 838 N.E.2d 943, 947 (2005); see also *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 332, 860 N.E.2d 246, 253 (2006) (stating "the legislature will always have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes"). Section 4 of the Statute on Statutes provides, in part, as follows:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2012).

The supreme court has "held that section 4 is a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *John Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406, 917 N.E.2d 475, 483 (2009).

¶ 26    In considering the retroactivity analysis and the facts of this case, section 99 of Public Act 97-1172 simply states "[t]his Act takes effect upon becoming law." Pub. Act 97-1172, § 99 (eff. Apr. 5, 2013) (amending 5 ILCS 315/3 (West 2010)). This court has noted this exact language does not indicate the amendment's intended temporal reach. *Rainbow Apartments v. Property Tax Appeal Board*, 326 Ill. App. 3d 1105, 1109, 762 N.E.2d 534, 538 (2001). Thus, the General Assembly did not clearly prescribe the temporal reach of amended section 3(n).

¶ 27    Because there is no express provision regarding the amendment's temporal reach, we must determine whether the amendment is a procedural or a substantive change. As noted, a substantive amendment will not be given retroactive effect. *White v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2014 IL App (1st) 132315, ¶ 32, 18 N.E.3d 92. "A substantive amendment 'establishes, creates or defines rights,' whereas '[p]rocedure is the machinery for carrying on the suit.' " *White*, 2014 IL App (1st) 132315, ¶ 32, 18 N.E.3d 92 (quoting *Deicke Center–Markland Children's Home v. Illinois Health Facilities Planning Board*, 389 Ill. App. 3d 300, 303-04, 906 N.E.2d 64, 68 (2009)); see also *Atkins*, 217 Ill. 2d at 71-72, 838 N.E.2d at 947 (noting the differences between substantive and procedural amendments).

¶ 28    As the Comptroller concedes, amended section 3(n) is substantive in nature and may not be applied retroactively. This is so because, before its enactment, the PSAs employed by the Comptroller were covered by and entitled to the protections of the Act, but after the enactment, they are not. Thus, amended section 3(n) cannot be applied retroactively.

¶ 29    However, as the Board found below, applying amended section 3(n) going forward from April 5, 2013, is not applying it retroactively, it is applying it prospectively. As noted by the Comptroller on appeal, applying amended section 3(n) immediately and going forward is not reaching back to nullify things that occurred when the PSAs were public employees for purposes of the Act–it does not require that dues paid by the PSAs to the Union be refunded, that raises received by the PSAs be rescinded, or that the results of grievances that were resolved be disturbed.

¶ 30    The General Assembly "has an ongoing right to amend a statute," and "there is no vested right in the mere continuance of a law." *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 291, 664 N.E.2d 36, 40 (1996). " 'A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation], or upsets expectations based in prior law.' " *Hayashi*, 2014 IL 116023, ¶ 25, 25 N.E.3d 570 (quoting *Landgraf*, 511 U.S. at 269). Moreover, "[a]n amended statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties." *Hayashi*, 2014 IL 116023, ¶ 26, 25 N.E.3d 570.

¶ 31    Here, the PSAs were not entitled to a continuation of the Act as it existed before the amendment, and the General Assembly had the right to remove them from the purview of the Act at any time. Prior to April 5, 2013, the PSAs were covered by the Act. On or after that date, they are not. This is a prospective application of an amendment, not a retroactive application. Moreover, the Board has the authority to exclude positions from existing bargaining units prior to the expiration of CBAs. See *State v. State*, 364 Ill. App. 3d 1028, 1034, 848 N.E.2d 118, 123 (2006) (rejecting the notion that a confidential employee could not be excluded from a bargaining unit until the next CBA is negotiated); *City of Washington, Illinois v. Illinois Labor Relations Board*, 383 Ill. App. 3d 1112, 1119, 891 N.E.2d 980, 986 (2008) (stating "the unit clarification process is appropriate to remove statutorily excluded employees from a

bargaining unit"); *Policemen's Benevolent Labor Committee*, 27 PERI ¶ 3 (ILRB State Panel 2011); see also 80 Ill. Adm. Code 1210.170(a)(3) (2003) (stating a unit-clarification petition may be filed to amend an existing bargaining unit when "a significant change takes place in statutory or case law that affects the bargaining rights of employees").

¶ 32    The Union argues the General Assembly's intention was that the effective date of section 3(n) would be delayed until the expiration of the CBAs. However, the legislature did not include limiting language providing that the exclusion of the PSAs as public employees would not take effect until the expiration of the CBAs. The legislature had included limiting language when it first enacted the Act, so it clearly knew how to do so. See 5 ILCS 315/15(b) (West 2012) ("Any collective bargaining agreement entered into prior to the effective date of this Act shall remain in full force during its duration."). Without such language, or any indication that the General Assembly sought to delay the effective date of the amendment, the Board properly excluded the PSAs from the existing bargaining units.

¶ 33                          III. CONCLUSION
¶ 34    For the reasons stated, we affirm the Board's judgment.


¶ 35    Affirmed.