NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210501-U

NO. 4-21-0501

IN THE APPELLATE COURT

FILED
April 19, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SUSAN McMILLAN, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Coles County |
| THE BOARD OF ZONING APPEALS AND | ) | No. 20MR367 |
| PLANNING OF THE CITY OF CHARLESTON, | ) | |
| Defendant-Appellee | ) | Honorable |
| | ) | Mark E. Bovard, |
| (Curry Construction, Inc., Intervenor-Appellee). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's determination that plaintiff's neighbor was not operating a "shooting range" on his property in violation of the Unified Development Code for the City of Charleston was not clearly erroneous.

¶ 2    In July 2020, plaintiff, Susan McMillan, contacted the City of Charleston Building Official (Building Official) requesting he cite her neighbor, John Curry, for constructing an outdoor "shooting range" on his property in violation of the applicable zoning ordinance, the Unified Development Code for Charleston, Illinois (UDC) (Charleston City Code § 10-1-1 *et seq.* (Ordinance No. 03-O-9 (adopted Mar. 18, 2003))). Upon investigating plaintiff's complaint, the Building Official determined Curry had not constructed a "shooting range" in violation of the UDC.

¶ 3        Plaintiff appealed the Building Official's determination to defendant, the Board of Zoning Appeals and Planning of the City of Charleston (BZAP). Following a hearing, BZAP entered a written "findings and decision" affirming the Building Official's determination.

¶ 4        Plaintiff filed a complaint for administrative review of BZAP's ruling, and the trial court affirmed. Plaintiff appeals, arguing, in part, BZAP's ruling was clearly erroneous. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6        In July 2020, plaintiff contacted the Building Official, requesting he find that Curry was operating an outdoor shooting range on his property in violation of the UDC. Plaintiff attached photos of the alleged shooting range, which showed Curry had constructed a "shooting platform *** and four bermed targets" in an open field on his property that ran adjacent to a road and within 600 feet of her house. After investigating the matter, the Building Official responded to plaintiff's request as follows:

> "The city zoning ordinance (Uniform Development Code-UDC) prohibits 'shooting ranges' except in a PUD overlay district and then only by special use. The code does not define 'shooting range.' Black's Law Dictionary does not define shooting range. Illinois statutes do not define shooting range.
>
> A shooting range is generally understood to be a place, often enclosed, where a person may practice shooting at targets. A shooting range may be open to the public, or it may be a private club. It may also be possible to argue that a shooting range exists anytime a landowner shoots at targets on his own land. Without a clear definition of shooting range,

the city should exercise caution in enforcing the UDC against a single individual or a few invitees shooting targets on their own property. ***

If, however[,] there is a public invitation to enter the property to shoot targets, or a private club is established then it may be more reasonable and likely that a court may support a finding that a shooting range exists. I think the following factors are important indices of a shooting range prohibited by the UDC: public use or use by a private club that has membership rules, payment of compensation to the landowner, regular or consistent use by others besides the landowner."

Thus, because Curry had not opened his land to the public or created a private club, the Building Official concluded Curry was not operating an outdoor "shooting range," as that term is used in the UDC. Following several more email exchanges between plaintiff and the Building Official, the Building Official informed plaintiff that "with this email, this concludes the matter regarding the City's determination and enforcement."

¶ 7          Plaintiff appealed the Building Official's determination to BZAP. On September 24, 2020, BZAP conducted a hearing. The Building Official testified first; he explained his reasoning in determining Curry was not operating a "shooting range" on his property. The Building Official summarized his determination as follows:

"MR. PAMPERIN: So the bottom line was, when presented with this, there was not a—I couldn't find a clear definition in the Unified Development Code regarding what a shooting range was, so we made the determination that, because it was a private use and personal use, that we didn't feel that that met

- 3 -

the—what a shooting range would be according to—in accordance with what the other restrictions were. And that's really the bottom line of it."

Plaintiff testified next. She testified Curry shot at targets throughout the year, sometimes as frequently as several times per week. Plaintiff explained why she believed the Building Official's determination was erroneous and summarized her main complaint with Curry's activities as follows:

"MS. MCMILLAN: My big concern is that he is shooting a high-powered rifle 600 feet from my home. We cannot speak over it. It shakes our windows. We don't like to use the road when he's shooting and it's very dangerous because we actually have livestock and horses and it's so—our—our—the pasture where we keep our animals is right by our house and it's a dangerous activity for us having someone shoot that often so close to us."

Plaintiff acknowledged that she and her neighbors occasionally hunted on their property, which required sighting-in their rifles by shooting at targets. Curry's attorney, William Tapella, also testified. Tapella testified only members of the Curry family would shoot on the property and the shooting occurred sporadically.

¶ 8        After listening to the testimony presented, BZAP unanimously voted to affirm the Building Official's determination. On September 25, 2020, BZAP entered a written "findings and decision." BZAP made the following findings: (1) the property at issue "is zoned A-Agricultural District" and "[s]hooting ranges are not listed as a permitted or conditional use in the A-Agricultural District"; (2) the UDC does not define the term "shooting range"; (3) Curry's property "is approximately 192 acres consisting of woods, pasture land, and prairie"; (4) Curry "has set up targets on approximately 6 acres of his property and shoots at these targets from time

to time"; and (5) the public is not invited to shoot on the property. Applying the UDC to these facts, BZAP concluded that, "[g]iven the lack of a clear definition of a shooting range in the UDC and the occasional personal private use of the Curry property for shooting, *** the Building Official did not err in deciding not to cite Mr. Curry for operating an illegal shooting range in violation of the UDC."

¶ 9		On October 15, 2020, plaintiff filed a complaint for administrative review. Plaintiff identified herself and Lorelei Sims as plaintiffs. BZAP answered the complaint by submitting the record of the administrative proceedings to the trial court. On November 12, 2020, BZAP filed a motion to strike Sims as a plaintiff because she was a not a named party to the administrative proceedings. The following day, John Curry filed a petition to intervene as a matter of right pursuant to sections 2-408(a)(2) and (3) of the Code of Civil Procedure (735 ILCS 5/2-408(a)(2), (3) (West 2018)). The trial court granted BZAP's motion to strike Sims as a plaintiff, and, during a December 2020 telephone conference, plaintiff waived any objection to Curry's petition to intervene. On June 11, 2021, the court conducted a hearing on plaintiff's complaint for administrative review. On August 4, 2021, the court entered a written order finding BZAP had not erred in affirming the Building Official's determination.

¶ 10		This appeal followed.

¶ 11		II. ANALYSIS

¶ 12		On appeal, plaintiff argues BZAP erred in affirming the Building Official's determination that Curry was not operating a "shooting range" on his property in violation of the UDC. Although it is not clear from her brief, plaintiff appears to contend, in part, BZAP's ruling interpreting the UDC conflicts with, and is therefore preempted by, state law—specifically, the

- 5 -

Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2018)) and the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 2018)).

¶ 13          Initially, we note that plaintiff, who is *pro se*, has raised a multitude of arguments in her 50-page appellant's brief. However, this court had significant difficulty understanding the gist of many of her arguments, let alone discerning the legal basis underlying the arguments. They consist of conclusory statements, lack relevance to the order appealed from, or are unsupported by legal authority. Accordingly, we are unable to address most of the arguments in plaintiff's brief. However, because it appears the main thrust of plaintiff's appeal is that BZAP's ruling was erroneous, and because BZAP and Curry have squarely addressed this question in their briefs, we find we are able to analyze this issue.

¶ 14          In reviewing a decision of an administrative agency, we review the agency's decision, not the decision of the trial court. See, *e.g.*, *Vincent ex rel. Reed v. Department of Human Services*, 392 Ill. App. 3d 88, 93 (2009). Where, as here, the issue on review presents a mixed question of fact and law, we apply the clearly erroneous standard of review. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50. "A mixed question of fact and law examines the legal effect of a given set of facts. [Citation.] Put another way, a mixed question asks whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated." *Id.* A decision is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.* Moreover, "an administrative agency's interpretation of its own rules is entitled to deference, because its interpretation stems from the agency's expertise and experience. [Citation.] Accordingly, this court will not disturb the agency's construction of

its own rules unless the agency's construction is clearly erroneous, arbitrary, or unreasonable." *City of Washington, Illinois v. Illinois Labor Relations Board*, 383 Ill. App. 3d 1112, 1118 (2008).

¶ 15        Section 11-13-1 of the Illinois Municipal Code (65 ILCS 5/11-13-1 (West 2018)) grants "the corporate authorities in each municipality" the authority to exercise 12 enumerated powers "within the corporate limits or within contiguous territory not more than one and one-half miles beyond the corporate limits and not included within the municipality." Pursuant to this statutory grant of authority, the City of Charleston established the UDC to, in part, adopt and enforce zoning ordinances. Charleston City Code §§ 10-1-2, 10-1-3, 10-1-4 (adopted Mar. 18, 2003). The Building Official is granted "the responsibility and authority to administer and enforce the provisions" of the UDC. Charleston City Code § 10-3-3 (adopted Mar. 18, 2003). BZAP has, in relevant part, the power to "[h]ear and act on all appeals of any order, requirement, decision or determination by the building official." Charleston City Code § 10-3-2(E)(3) (adopted Mar. 18, 2003). All final administrative decisions of BZAP are subject to judicial review pursuant to the Administrative Review Law. See 65 ILCS 5/11-13-13 (West 2018).

¶ 16        Here, the parties do not dispute BZAP's factual findings. Curry's property is located outside of the corporate limits but within contiguous territory not more than 1.5 miles beyond the corporate limits and is therefore subject to the UDC. The property is zoned agricultural. "Shooting ranges" are not listed as permitted or conditional uses within agricultural districts. The UDC does not define the term "shooting range." Curry has constructed a shooting deck and four "bermed targets"—targets that have been placed in front of mounds of dirt—on approximately six acres of his land and within 600 feet of plaintiff's house. Curry has not opened his property to the public. Curry and his family members are the only ones who shoot at the

targets. The shooting occurs sporadically throughout the year but sometimes can occur as frequently as several times per week. The only question on review is whether BZAP clearly erred in applying the UDC to the relevant facts when it determined Curry's shooting activities did not constitute a "shooting range" for purposes of the UDC.

¶ 17    The UDC provides that words not defined therein "shall be defined by reference to: a) the building code adopted by the city \*\*\*, b) the Webster's Third New International Dictionary, unabridged, 1993, or \*\*\* c) the Illinois Compiled Statutes." Charleston City Code § 10-2-1 (adopted Mar. 18, 2003). None of the references listed contain a definition of "shooting range." Thus, the Building Official and BZAP endeavored to determine what constituted a "shooting range" for purposes of the UDC. Both concluded that, as used in the UDC, the term presupposes some sort of a commercial use, and that Curry's usage was not commercial. BZAP determined that the type of shooting involved on Curry's property was a "subordinate use" given the property's zoning as "A-Agricultural District" and in keeping with the nature of agricultural property. BZAP found that the shooting complained of was "occasional and sporadic" and only by Curry and members of his family. Considering the testimony of the witnesses, including plaintiff's, that hunting—which included the hunters sighting-in their rifles by shooting at targets—regularly occurred in the area, we cannot say BZAP's determination that Curry was not operating a "shooting range" in violation of the UDC was "clearly erroneous, arbitrary, or unreasonable." *City of Washington, Illinois*, 383 Ill. App. 3d at 1118.

¶ 18    As stated above, in arguing to the contrary, plaintiff contends BZAP's interpretation results in a conflict between the UDC and Illinois law—specifically, the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2018)) and the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 2018)).

¶ 19    Non-home-rule units of government must comply with "Dillon's Rule," which provides "non-home-rule units possess only those powers that are specifically conveyed by the Constitution or by statute." *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 694 (2004). "While non-home-rule municipalities have the authority to enact ordinances, such ordinances may in no event conflict with state law or prohibit what a state statute expressly permits." *Village of Wauconda v. Hutton*, 291 Ill. App. 3d 1058, 1060 (1997). Although local governments have the power to enact zoning ordinances under article 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11-13-1 *et seq.* (West 2018)), "ordinances enacted under those powers that conflict with the spirit and purpose of a state statute are preempted by the statute." *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 259 (2003). Preemption may be accomplished through explicit statutory language or implied by law. *Id.* at 261. The doctrine of preemption by implication "holds that where the legislature has enacted a comprehensive system of regulation and licensure ***, the legislature implies by that system that there is no room for regulation by local governmental units." *Id.*

¶ 20    Here, BZAP's interpretation of the UDC does not conflict with the spirit and purpose of either statute cited by plaintiff. Plaintiff asserts BZAP's interpretation conflicts with the Wildlife Code because "hunting is a highly regulated recreational use of land, administered and strictly enforced by the Department of Natural Resources." However, the issue in this case does not involve hunting. Plaintiff's complaints are focused on Curry's target shooting. BZAP's decision does not allow Curry to hunt on his property in violation of the Wildlife Code.

¶ 21    Plaintiff's argument with respect to the Premises Liability Act is also without merit. That act, in relevant part, provides the following:

"§ 5. Firearm ranges; liability.

(a) As used in this Section, 'firearm range' means a rifle, pistol, silhouette, skeet, trap, black powder, or other similar range in this State used for discharging firearms in a sporting event, for practice or instruction in the use of a firearm, or for the testing of a firearm. 'Firearm range' also includes licensed shooting preserves and public hunting areas operated or licensed by the Department of Natural Resources.

\*\*\*

(c) An owner or operator of a firearm range \*\*\* is immune from any criminal liability and is not subject to any action for public or private nuisance or trespass arising out of or as a consequence of noise or sound emissions resulting from the normal use of the firearm range, if the firearm range conforms to any one of the following requirements:

\* \* \*

(3) If the firearm range is situated on land otherwise subject to land use zoning, the firearm range is in compliance with the requirements of the zoning authority." 740 ILCS 130/5 (West 2018).

BZAP's interpretation of a "shooting range" for UDC purposes does not conflict with this statute's definition of a "firearm range." The legislature clearly did not intend for the definition of a "firearm range" to be applied to the instant situation when it indicated that definition was only to be "used in this Section." *Id.* § 5(a). Moreover, the provisions of the Premises Liability Act cannot be viewed as preempting local zoning of "firearm ranges." To the contrary, the statute makes it clear that "firearm ranges" will be subject to "the requirements of the zoning

authority." *Id.* § 5(c)(3). Thus, BZAP's interpretation is not preempted by either the Wildlife Code or Premises Liability Act.

¶ 22        In closing, we note that, in his brief, Curry argues the trial court should have dismissed plaintiff's complaint for administrative review pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2018)). However, the court did not address his request for dismissal. Thus, because the court did not deny Curry the requested relief, he may not now claim an error occurred. We therefore do not address Curry's argument.

¶ 23                               III. CONCLUSION

¶ 24        For the reasons stated, we affirm the trial court's judgment.

¶ 25        Affirmed.